STATE OF SOUTH CAROLINA )
COUNTY OF RICHLAND ) IN THE COURT OF COMMON PLEAS

FILED
2004 MAY -5 PM 2:24
BARBARA A. SCOTT
C.C.C. & G.S.

Powers Printing Company, Inc., Plaintiff,

vs.

AGFA Corporation and XPEDX, Defendants.

Case No.:

**COMPLAINT**
(Jury Trial Demanded)

The Plaintiff, complaining of the Defendants above-named, would respectfully allege as follows:

1. Powers Printing Company, Inc. (hereinafter "Powers") is a corporation organized under the laws of the State of South Carolina. Powers does substantial business in Richland County.

2. The Defendant AGFA Corporation (hereinafter "AGFA") is a foreign corporation organized under the laws of a state other than South Carolina. At all times mentioned herein, AGFA owned property, and/or regularly conducted business and had agents in the State of South Carolina, including Richland County.

3. The Defendant XPEDX is a corporation organized under the laws of the State of Ohio. At all times mentioned herein, XPEDX owned property, conducted business and had agents in South Carolina, including Richland County.

4. This Court has jurisdiction over both Defendants in that both Defendants were at all times herein and are now doing regular business in this State, own property in this State and/or have employees and/or agents in this State.

FOR A FIRST CAUSE OF ACTION

5. In the summer of 2002, Powers, a commercial printing business, decided to update certain proofing and plate making equipment connected with its printing business. Powers was solicited by Defendant XPEDX to compare AGFA's product line with other manufacturers that Powers was reviewing.

6. AGFA and XPEDX, through its employees, met with Powers on several occasions to promote AGFA's proofing and plate making equipment. During the course of the sales presentations, Powers questioned Defendants' representatives concerning their ability to provide prompt, competent, and reliable service for said equipment in the event Powers experienced problems during its use. Defendants repeatedly assured Powers that their service of their equipment would insure that Powers' production and quality standards would not be jeopardized.

7. In an effort to persuade Powers to purchase their equipment, Defendants represented, *inter alia*, that said equipment would dramatically improve both Powers' production capacity and the quality of its printed product. Powers' representatives, during the course of Defendants' sales presentations, gave Defendants very specific details concerning Powers' production requirements and quality standards. Further, Defendants were advised that in the event of Powers' purchase of said Defendants' products, Powers' employees would require detailed and competent training concerning the operation of said product and that Powers would

require timely (within no longer than 24 hours of request) and competent service, repair, and maintenance of said equipment in order to meet customer deadlines and preserve customer loyalty and satisfaction.

8. Based solely on Defendants' numerous promises as to the increased performance qualities of Defendants' product, Powers purchased said product in the fall of 2002.

9. Powers also for good and valuable consideration contracted with Defendants for Defendants to provide timely service and maintenance on said product as requested by Powers. A copy of said contract is attached hereto as Exhibit A (hereinafter "Contract"). In accordance with said contract, Defendants agreed to timely insure that said product was at all times fully operational and performing to the production standards as represented by Defendants prior to Powers' purchase of said product. In consideration, Powers paid Defendants AGFA and XPEDX a substantial fee for the maintenance agreement.

10. Despite Powers' timely payment of said fee to Defendants in accordance with the terms of said Contract, Defendants have, from the outset of said Contract, repeatedly breached said Contract by failing to timely and competently service and repair its product as required under said Contract. For over twelve months, Defendants repeatedly intentionally breached their contractual duty to competently and timely service and maintain said equipment.

11. As a direct and proximate cause of Defendants' failing to perform pursuant to the service Contract, Powers, for over twelve months suffered numerous slow downs and work stoppages which caused any alleged repair and replacement remedy to fail of its essential purpose in accordance with S. C. Code Ann. § 36-2-719 (1976). Such slow downs and stoppages resulted in foreseeable damage to Powers' business reputation; loss of customers; and near fatal loss of

revenue for more than twelve months. As a direct and proximate cause of Defendants' repeated breaches of the service Contract, Powers has incurred reasonable foreseeable damages including, but not limited to, the following:

A. Lost revenue;

B. Loss of several regular customer accounts who were forced to transfer business because of delays caused by Defendants' failure to properly service said product and damage to Powers business reputation;

C. Loss of at least six valued employees who left because of numerous breakdowns of said product;

D. Increased costs of consumable items;

E. Increased managerial time to deal with numerous failures of Defendants to properly service said product;

F. Loss of customer confidence resulting in loss of business; and

G. Costs of the service contract which failed to properly solve the problems for over twelve months.

FOR A SECOND CAUSE OF ACTION

12. Each and every allegation set forth above is realleged herein as if set forth verbatim.

13. Defendant XPEDX, as distributor and seller of said product, and as an agent of Defendant AGFA, contracted with Powers to provide Powers with a product that met all production capacity and quality needs of Powers as fully described to Defendants prior to

Powers' purchase. A copy of said purchase contract is attached hereto as Exhibit B In consideration of such obligations, Powers fully performed its obligations under said Contract by payment of over $140,000 to Defendants.

14. As a result of Defendant XPEDX's failure (1) to provide a product that performed as warranted, and (2) to timely and competently service said equipment in order to avoid production slow downs and production stoppages, Defendant XPEDX breached its Contract with Powers, directly and proximately, resulting in the reasonable foreseeable damages to Powers including, but not limited to, those described in paragraph 10 above.

FOR A THIRD CAUSE OF ACTION

15. Each and every allegation set forth above is realleged herein as if set forth verbatim.

16. From the outset of the numerous problems with Defendants' service of Powers' equipment, both Defendants negligently misrepresented that said problems were caused not by their negligent service, but rather by the negligence of certain of Powers' employees. Powers was justified in relying on Defendants' representations given their expertise concerning the equipment they manufactured and sold. As a direct and proximate cause of Defendants' twelve months of negligent misrepresentations concerning the true cause of their products' failure to perform as warranted, Powers suffered those reasonable foreseeable damages as enumerated in paragraph 10 above.

WHEREFORE, Plaintiff Powers prays for judgment against the Defendants, jointly and severally for the actual reasonable foreseeable damages suffered by Powers; for the costs of this

action; and such other and further relief as to this Court deems just and proper.

Robert C. Kelly
S. C. Bar #3366
Post Office Box 7037
Columbia, South Carolina 29202
(803) 771-8908

JETER & WILLIAMS, P. A.

By: Edwin Russell Jeter
S. C. Bar #2997
Post Office Box 7425
Columbia, South Carolina 29202
(803) 765-0600

May 5, 2004

Attorneys for the Plaintiff

DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by Jury pursuant to Rule 38, S. C. R. Civ. P.

# HARDWARE SYSTEM MAINTENANCE AND SOFTWARE SUPPORT TERMS AND CONDITIONS

1. DEFINITIONS: "System" means the System and Options indicated on the front of this Agreement. "Software" means the software in the System and includes only those software programs designed by Agfa for Prepress workflow and does not include programs designed for word processing, accounting, financial or other general business programming applications. "Upgrade" means a version of software designated as such by Agfa that includes feature enhancements and new functionality beyond that contained in the customer's current version. "Revision" means a version of the software designated as such by Agfa that revises or corrects deficiencies or defects such as "bugs."

2. SYSTEM MAINTENANCE. Agfa agrees to perform the following maintenance on the System at the Site for the term of this Agreement: (1) emergency maintenance when requested by the Customer and deemed necessary by Agfa when the System is not operational and (2) preventive maintenance [illegible] and [illegible] by customer that Agfa considers necessary for proper operation of the System. This maintenance includes labor, travel, and replacement parts at no additional charge to Customer if maintenance is performed during normal Agfa working hours. System Maintenance performed outside normal working hours and Software services not covered by this Agreement will be charged to Customer at the hourly rate then in effect. Agfa will use its best reasonable efforts to respond to maintenance calls with its first available field support person. If Customer is entitled to an uptime guarantee under Agfa's SelectSupport Program, as may be in effect at the commencement of this agreement, such guarantee is limited to Agfa-configured hardware that is in an inoperable (hard-down) state due to physical failure of a component. This guarantee is not available on Star RIPS, SelectSet5000 or Sherpa Systems and does not include intermittent problems or problems caused by the incompatible interaction of an Agfa-configured product with a third party vendor's product. This guarantee excludes those problems associated with software upgrades from a third party that caused an inoperable condition not related to hardware failure. Customer must register a claim to obtain credit on a renewal contract for failure to meet uptime guarantee prior to renewal. This shall be the customer's sole remedy for failure to meet the uptime guarantee.

3. SOFTWARE SUPPORT: Agfa agrees to provide the following Software Support: (1) telephone consultation during the hours of 8:00 a.m. to 5:00 p.m. local time, Monday through Friday, exclusive of Agfa holidays; (2) Software maintenance revisions and Software reference manuals made available during the term of this Agreement; and (3) an Agfa newsletter regarding Software enhancements, news releases and application tips. Customer agrees that all Software, change orders, and updates are provided subject to the applicable Agfa Purchase, Lease, Rental, or Conditional Sale Agreement. No on-site Software services are included under this Agreement. Software services not covered by this Agreement, and requested by Customer may be provided at Agfa's then effective rates and terms. Operator training or System Manager training are not provided under this Agreement.

4. EXCLUSIONS: System maintenance provided by Agfa under this Agreement does not include (1) Software Upgrades and/or new version releases (2) resolution of third party system and/or network failures (3) processor rollers, filters, beaches, lamps/bulbs and glass parts (4) repair of damage caused by customer's negligence, inadequate electrical power, accident, fire, water, or power line conditions, or (5) over heating or cooling of the system. Operating supplies, accessories including imagesetter cassettes and on-site Software services are not included under this Agreement.

5. CUSTOMER OBLIGATIONS: Customer agrees to comply with all Agfa installation and operating instructions including, but not limited to, regular cleaning of processors. Customer shall not (1) abuse, misuse, or neglect the System or Software (2) modify or make attachments to the System or Software without prior authorization by Agfa (3) operate the System or Software in a location with excessive dirt, dust, moisture, fumes, improper humidity or extremes of temperatures; (4) allow maintenance of the System or Software by others without authorization from Agfa; (5) use or combine the System or Software with systems, or software provided by others; (6) assign or cancel this Agreement; or (7) transfer parts or Software from other Agfa Systems to the System and Software covered by this Agreement. If Customer adds any Agfa option to the System or Software during the term of this Agreement, Customer agrees to purchase System Maintenance and Software Support for that option at the then applicable rate. Customer agrees to maintain the Software at the revision level deemed necessary by Agfa. Customer acknowledges and understands the Odyssey, modem(s) and line conditioners provided by Agfa remain the property of Agfa and are to be used solely for the purposes of providing remote diagnostics and enhanced services. Upon termination or expiration of this Agreement, Customer agrees to allow Agfa access to the Site to remove the Odyssey, modem(s) and line conditioners. Agfa may suspend or not [illegible] Hardware System Maintenance or Software Support, impose additional charges, or terminate this Agreement if the Customer fails to perform its obligations under this Agreement.

6. ACCESS: Customer agrees to make the System and Software available for maintenance within a reasonable time after arrival of support personnel. Customer shall not remove the System or Software from Site without the prior written consent of Agfa. If this consent is given, Agfa will install the System and Software at customer's expense after relocation.

7. SITE REQUIREMENT. Customer agrees to provide a Site which meets Agfa environmental and electrical specifications, including a source of electric power consisting of either a separate electric line installed from the main junction box for each unit of the system(s) or an Agfa authorized power conditioning device. To permit continuity of support under this Agreement, the Customer will not remove the System or Software from the Site without the prior written consent of Agfa. In addition to any other remedies, Agfa reserves the right to adjust the price, temporarily discontinue Support under this Agreement, or terminate the Agreement if the System or Software is so removed.

8. MAINTENANCE AND SUPPORT LIMITATIONS: System maintenance and Software Support are contingent upon the System and Software being unmodified and properly maintained at the latest revision level. If the System and Software are not under warranty immediately prior to the effective date of this Agreement, Agfa may inspect the System and Software to determine whether they are in proper operating condition and at the latest revision level. This inspection and any repairs, adjustments or updates deemed necessary by Agfa shall be made at Customer's expense prior to commencement or continuation of System Maintenance and Software Support.

9. PARTS: Agfa will supply replacement parts it considers necessary on an exchange basis. PARTS OR SYSTEMS MAY BE NEW, SERVICEABLE USED, OR REPROGRAMMABLE ITEMS EQUIVALENT TO NEW IN PERFORMANCE.

10. WARRANTY EXCLUSION. Agfa makes no warranty of any kind under this agreement, either expressed or implied, including warranties of merchantability and fitness for a particular purpose.

11. LIMITATION OF LIABILITY: Customer's sole remedy for any breach by Agfa shall be repeat performance of any required System Maintenance or Software Support. In NO event shall AGFA be obligated to provide replacement parts, equipment or software. In NO event will AGFA be liable for (1) Lost Profits, Lost Data or any other INCIDENTAL or CONSEQUENTIAL DAMAGES; (2) Damages caused by Customer's failure to perform its obligations; (3) Damages caused by operator error or by repairs or alterations made without the prior written approval of AGFA. Agfa will be liable for personal injury caused solely by the negligence of its employees.

12. APPLICABLE LAW: This Agreement and the rights of the parties hereto and any other agreement or transaction between the parties hereto shall be governed by the laws of the Commonwealth of Massachusetts. The Customer hereby irrevocably consents to the exclusive jurisdiction of the Courts of the Commonwealth of Massachusetts, or the Federal Court in the Eastern District of Massachusetts, in connection with any action or proceeding arising out of or related to this Agreement or any other agreement or transaction between the parties hereto. In any such litigation, the Customer waives personal service of any summons, complaint or other process and agrees that service may be made by certified or registered mail to it, at the address provided herein. The Customer waives trial by jury in any litigation arising out of or related to this Agreement or any other agreement or transaction between the parties hereto.

13. FORCE MAJEURE. Agfa shall have no obligations hereunder for repairs, maintenance, or replacements caused by operator error, maintenance, or replacements caused by operator error, maintenance of the System or Software by others without authorization from Agfa, acts of God, or other events beyond the control of Agfa.

14. GENERAL: This Agreement is not assignable or transferable by customer without the prior written consent of Agfa. Agfa may assign or delegate its performance hereunder.

This is the complete Agreement between the parties and merges all prior discussions and negotiations. No waiver or change of any term or condition shall be effective unless made in writing and signed by persons so authorized by Agfa and Customer. The invalidity, unenforceability, or illegality of any provision of this Agreement shall not affect the validity, enforceability, or legality of any other provision. All obligations of the parties are subject to events beyond their reasonable control. This Agreement becomes effective upon acceptance by Agfa. No action, regardless of form, may be brought by either party more than one (1) year after the cause of action has accrued, except that a suit for non-payment may be brought more than one (1) year after the date of last payment.

Please sign on the line above to accept the Terms and Conditions of this Agreement.

GS-01-0504-4

EXHIBIT A




Quote Number: 105321
Expires: 10/ 24/ 2002

[illegible]
Power Printing (Roebuck)
97 Industrial Park Road
Roebuck, SC29376
Phone: (864) 576-1100
Fax: (864) 576-7402

| Qty | Item Description | Unit Price | Total Price |
|---|---|---|---|
| | **Digital Proofers/Printers/Plotters** | | |
| 1 | Agfa Palladio 4-up Platesetting w/Cassette & Trolley | $39,995.00 | $39,995.00 |
| 1 | AgfaJet Sherpa 24 + Rip package | $12,195.00 | $12,195.00 |
| | | | $52,190.00 |
| | **Rips, Imagesetters, CTP** | | |
| 1 | Apogee Pilot Series 3 / PDF Rip 4-up & IRT / Print Drive 4-up | $28,500.00 | $28,500.00 |
| 1 | Agfa Differential SCSI Board for Palladio | $600.00 | $600.00 |
| 1 | Agfa Palladio Punch Unit Base Plate (Manatory if no punch options are installed) | $1,000.00 | $1,000.00 |
| 1 | Agfa TIFF Out Option for PrintDrive Series 3 V1.0 | $1,000.00 | $1,000.00 |
| 1 | Digital Quickstrip S2V2 | $7,500.00 | $7,500.00 |
| 1 | PC Server 2002PLT | $9,795.00 | $9,795.00 |
| 1 | Agfa PC Server 2002PD - Server Platform | $8,595.00 | $8,595.00 |
| 1 | Differential SCSI Kit for Rip or Print Drive (Palladio) | $795.00 | $795.00 |
| | | | $57,785.00 |
| | **Miscellaneous** | | |
| 1 | PROCAM LSN-SR - Neutralizing/Filtration System | $11,139.25 | $11,139.25 |
| | | | $11,139.25 |
| | **Configuration, Burn-In/ Installation** | | |
| 4 | Integration Services | $175.00 | $700.00 |
| 4 | Integration Services | $175.00 | $700.00 |
| | | | $1,400.00 |
| | **Training** | | |
| 1 | Start-Up Services / Mid | $12,845.00 | $12,845.00 |
| 1 | Agfa Training Apogee PDF Rip for PC (1 day) | $2,750.00 | $2,750.00 |
| 1 | Agfa Training – Digital Quick Strip | $2,750.00 | $2,750.00 |
| 1 | Agfa Training Sherpa Proofing Rip | $2,750.00 | $2,750.00 |
| 1 | Preps Training 2 days | $0.00 | $0.00 |
| 1 | Agfa Training Apogee Pilot (3 days) | $5,250.00 | $5,250.00 |
| 1 | Agfa Training Apogee PrintDrive | $2,750.00 | $2,750.00 |
| 1 | Agfa In-RIP Trapping (w/PDF RIP) - (4-6 hours) | $1,250.00 | $1,250.00 |
| | | | $30,145.00 |

| | |
|---|---|
| Sub Total: | $152,669.25 |
| xpedx discount: | $1,290.00 |
| Estimated Shipping Costs : | $0.00 |

Actual shipping charges to be billed.

| | |
|---|---|
| Grand Total: | $151,379.25 |

Installation Responsibility: Customer

**EXHIBIT B**

Installation Date: To be determined
Additional Terms:

**Customer Acceptance**

Ray E. Mechling, Powers Printing
Customer Name

[signature]
Authorized Signature

Printed Name

GM
Title

10/2/02
Date

Subject to the terms and conditions of the xpedx Purchase Agreement and proper credit approval

STATE OF SOUTH CAROLINA )
COUNTY OF RICHLAND )

IN THE COURT OF COMMON PLEAS

Powers Printing Company, Inc.,

Plaintiff,

vs.

AGFA Corporation and XPEDX,

Defendants.

Case No.: 04CP 40 2264

FILED 2004 MAY -5 PM 2:24 BARBARA A. SCOTT C.C.C. & G.S.

**SUMMONS**
(Jury Trial Demanded)

TO THE DEFENDANTS ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, or otherwise appear and defend, and to serve a copy of your Answer to said Complaint upon the subscriber at his address, Post Office Box 7037, Columbia, South Carolina, 29202, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, or otherwise appear and defend, the Plaintiff in this action will apply to the Court for the relief demanded therein, and judgment by default will be rendered against you for the relief demanded in the Complaint.

Robert C. Kelly

Robert C. Kelly
S. C. Bar #3366
Post Office Box 7037
Columbia, South Carolina 29202
(803) 771-8908

**JETER & WILLIAMS, P. A.**

**By:** ___Edwin Russell Jeter___
**Edwin Russell Jeter**
**S. C. Bar #2997**
**Post Office Box 7425**
**Columbia, South Carolina 29202**
**(803) 765-0600**

May __5__, 2004

Attorneys for the Plaintiff